HENRY impleaded with PIERCE vs. THE BANK OF SALINA.

A plaintiff on the record, or plaintiff in interest, when called upon to testify under the usury act of 1837, cannot be compelled to disclose facts tending to shew that the promissory note, to recover which the suit is brought, was discounted by him in violation of the statute (1 *R. S.* 595, § 28) concerning the discounting of notes, &c., by officers and agents of banking corporations.

A note discounted by the Teller of a Bank, for his own benefit, in violation of the statute above cited, is void; and where the note alleged to have been so discounted was in suit for his benefit, and in opening the defence to the jury, this was stated as one ground of defence, and usury as another ground, such Teller, although ostensibly called as a witness to prove the usury, cannot be required to disclose the transaction for the reason that his testimony might subject him to a loss of the note upon a ground distinct from the defence of usury.

A witness, or party called as a witness, may not only object to testifying to the main fact which would subject him to a penalty or forfeiture, but may also refuse to disclose any one of a series of facts which together would expose him to such penalty or forfeiture.

Where a witness objected to testifying on the ground that his testimony might subject him to an indictment, or prosecution for a penalty, it is not, in a Court of Review, an answer to the claim of privilege, that the statute of limitations has run against the offence, unless it appear that such answer was suggested on the trial. *Per* BRONSON, J.

On error from the Supreme Court. The Bank of Salina sued Henry and Pierce in the Court below upon a promissory note signed by Pierce as principal, and Henry as surety, payable to the bank and not negotiable. Henry pleaded the general issue and gave notice of the defence of usury, verifying the notice according to the usury act of 1837. On the trial at the Circuit in April, 1844, after the plaintiffs had rested, the defendant's counsel opened the defence to the jury, and stated, among other things, that the note was made to be discounted at the plaintiffs' bank, and was in the first instance presented by Pierce to the bank for discount; that the bank refused to discount it; that this fact was known to *Elisha Chapman,* who was the *teller* of the bank; that the note was afterwards presented to Chapman, who, with full knowledge that the note had been presented to the bank for discount and refused, discounted the same, and in so doing deducted $10

from the face of the note, under a corrupt and usurious agreement between him and Pierce. The note was payable in sixty-three days from its date.

To prove this defence the defendant called the said Chapman and had him sworn as a witness, and in the first instance proposed to prove by him, under the plea of the general issue, that the note was usurious and void. Chapman objected to answering on the ground that his testimony would form a link in the chain of evidence to convict him of a misdemeanor, or would expose him to a penalty or forfeiture. In support of the objection it was insisted that when called as a mere witness, and not as a party under the usury act of 1837, he could not be compelled to testify under the provisions of that act. It was also insisted that he was protected from answering under 1 *R. S.* 595, § 28, which declares that "no president, director, cashier, clerk or agent, of any corporation having banking powers, and no person in any way interested or concerned in the management of any such corporation, shall discount or directly or indirectly make any loan upon any note which he shall know to have been offered for discount to the directors, or to any officer of such corporation, and to have been refused, and that every person violating the provisions of that section shall for each offence forfeit twice the amount of the loan which he shall have made." The Circuit Judge sustained the objection of the witness, and the defendant excepted.

The defendant then offered to prove the usury by the same witness *under the notice of the defence of usury served with the plea, on the ground that he was the plaintiff in interest.* The witness again objected on the grounds, *first,* that the act of 1837 did not require him to testify, unless it should first appear that he was the plaintiff in interest and the owner of the note, and *second,* that he could not answer and shew himself to be the owner of the note, without subjecting himself to a penalty or forfeiture under the statute which is above set forth, or without establishing a link in the chain of evidence which might subject him to a penalty or forfeiture, under that statute. Objection sustained and defendant excepted.

The defendant then offered to prove by the witness that he was the party in interest. This was objected to by the witness, and the objection sustained on the same grounds, and an exception taken. A verdict was had for the plaintiffs, and the defendant moved the Supreme Court for a new trial on a bill of exceptions. That motion was denied and judgment rendered for the plaintiffs. (*See* 2 *Denio* 155.)

*Wm. J. Hough*, for plaintiff in error. 1. Chapman was bound to testify as a witness under the general issue. The case, as disclosed in opening the defence to the jury, did not show that he had actually received usury so as to expose him to an indictment for a misdemeanor, or if it did, the statute of limitations had run so as to be a bar to any such indictment. 2. The defendant should have been permitted to prove by the witness, under the notice annexed to the plea, that he was the plaintiff in interest, and also the usurious agreement. The usury act of 1837 would protect him against the use of his testimony to subject him to any criminal prosecution or penalty or forfeiture; or at all events the statutes of limitation would be a perfect protection. (*Henry* vs. *Bank of Salina*, 5 *Hill* 523, 525-6-7; *Stephens* vs. *White, id.* 548; *Close* vs. *Olney*, 1 *Denio* 319; 1 *Phil. ev.* 223, note (*a*); 1 *Cow and Hill's notes* 739; *The People* vs. *Mather*, 5 *Wend.* 229. 250. 257.)

*N. Hill, Jun., and Geo. F. Comstock*, for defendants in error, in addition to the grounds upon which the judgment of the Supreme Court was placed, insisted, that if the note was discounted in violation of the statute above referred to concerning banking corporations, it was void and could not be recovered in this action, (*Chitty on Cont.* 6 *Am. ed.* 656, 657; *Story on Cont.* § 218, &c.; *Collins* vs. *Blantern*, 1 *Smith's leading cases* 169; *Nellis* vs. *Clark,* 20 *Wend.* 32,) and regarding Chapman as plaintiff in interest, (as he was claimed to be on the trial) his testimony, if he should disclose the transaction or any part of it, might be used on the trial to

defeat a recovery upon this ground, even if the defence of usury should fail, and thus subject him to a loss of the money he had loaned. This would be such a forfeiture as would bring him within the rule of protection; and against this forfeiture no statute of limitations had commenced to run. (*Livingston* vs. *Harris*, 11 *Wend.* 330, 331; *S. C.* 3 *Paige* 533, 538; *Story's eq. pl.* §§ 579, 580, 2, 3, 4; 1 *Greenl. ev.* § 452, *and notes*, 2 *R. S.* 405, § 71.)

BRONSON, J. There is another ground, besides those mentioned by the Supreme Court, on which Chapman was privileged from answering the questions put to him. It was one branch of the defence that the witness, being the teller of the bank, discounted the note after it had, with his knowledge, been offered for discount to the directors, and been refused by them. If this fact could be established, Chapman would not only forfeit twice the amount of the loan which he made, (1 *R. S.* 595, § 28,) but he would forfeit the debt itself. As the discounting of the note was expressly forbidden by the statute, there can be no doubt that the security would be void. A witness must speak, though the answer may establish that he owes a debt, or is otherwise subject to a civil suit; but he is not bound to speak where the answer may subject him to a forfeiture, or any thing in the nature of a forfeiture of his estate or interest. (2 *R. S.* 405, § 71; 1 *Phil. ev.* 278; *Mitf. Plead.* 197, *ed. of* '33; *Livingston* vs. *Tompkins*, 4 *John. Chan.* 432; *Livingston* vs. *Harris*, 3 *Paige* 583, *and* 11 *Wendell* 329, *S. C. in error.*) As the answer of the witness might tend to establish facts which would work a forfeiture of the debt, he was not obliged to testify. This ground is of itself sufficient to establish the privilege of the witness; and as to this, the statute of limitations has no application.

The grounds on which the privilege of the witness was put by the Supreme Court are equally conclusive, unless a prosecution under the usury law, and a suit under the bank law for twice the amount of the loan, had been barred by the statute of limitations; and there is nothing in the case to show that

Henry *v.* Salina Bank.

a prosecution, or a suit, or both of them, had not been com-
menced in due time.   In all the cases where it has been held
that the running of the statute took away the privilege of the
witness, it expressly appeared, not only that the time for
sueing or prosecuting had elapsed, but that no suit or prose-
cution had been commenced, or if one had been commenced,
that it had been discontinued.   Here the statute was not even
mentioned on the trial.   It may not have been necessary for
the defendant to prove the negative fact that no suit or prose-
cution had been commenced.   But if he intended to rely on
the statute, he was at least bound to say so ; and then the wit-
ness might have answered, that proceedings against him had
already been commenced.

The witness claimed his privilege, and there was a *prima
facie* case for allowing it.   If there was any answer to that
case, the defendant should have mentioned it, for the double
purpose of allowing the truth of the supposed answer to be
examined at the proper time, and of dealing fairly with his
adversary and the Circuit Judge.   A party is not at liberty
to start a question, on a motion for a new trial, or in a Court
of Review, which, had it been mentioned on the trial, might
have received a satisfactory answer.   This is a principle of
every-day application, and there is nothing in this case which
should induce a departure from it.

WRIGHT, J.   A president, director, cashier, clerk, agent, or
any person in any way interested or concerned in the manage-
ment of the concerns of any banking corporation, is prohi-
bited by statute from discounting, or directly or indirectly
making any loan upon any note, bill, or other evidence of debt,
which shall have been offered to the directors of such bank-
ing corporation for discount; and every note, bill, or other
evidence of debt, so discounted, or upon which any loan shall
have been made by any of the persons aforesaid, knowing that
such note has been so offered and refused, shall be utterly
void.   (1 *R. S.* 604, § 10.)   The statute declaring the act
of discount or loan unlawful, the note or bill would also be

void upon general principles. It is a settled doctrine that a contract prohibited by statute is void.

The defendants' counsel, among other things, stated to the jury, in opening the defence, that the note in question had been presented in the first instance to .the Bank of Salina for discount; that the bank refused to discount it; that this was known to Elisha Chapman, who was at that time the teller of the bank; that the note was subsequently presented to the said Elisha Chapman, who, with full knowledge that the same had been presented at the bank and refused, discounted the note, and in so doing, deducted $10 from the face thereof under a corrupt and usurious agreement between him and the defendant, Pierce. Chapman was then called as a witness, and both under the plea of the general issue, as a mere witness, and under the notice annexed to and served with the plea, as plaintiff in interest, refused to answer any of the several questions put to him, urging, amongst other grounds, that such answers might form a link in the chain of testimony tending to expose him to a penalty or forfeiture.

Without discussing the questions whether Chapman, when called as a mere witness, and not as plaintiff under the usury law of 1837, was protected by that statute, or whether when called under the notice annexed to the plea of the general issue, as plaintiff in interest, before he can be compelled to answer and criminate himself, it must first appear that he is the plaintiff in interest; or whether for the reason that the statute of limitations had run both against the criminal offence of usury, and the forfeiture of twice the amount of the loan, under 1 R. S. 595, § 28, he was protected against the consequences of his testimony, ·I am of the opinion that the witness was privileged from testifying. Any one of the questions propounded might have formed one link in a chain of testimony tending to bring him within the statutory prohibition as to the discounting of notes by bank officers, and showing him guilty of an unlawful act, one of the consequences of which was an utter forfeiture and loss of the note. And this was a consequence from which the statute of limitations could

Henry *v.* Salina Bank.

not save him.   The rule is well settled that a witness is not required to give any answer which will have a tendency to accuse himself of any crime or misdemeanor, or to expose him to any penalty or forfeiture; or when, by answering, a link may be added to a chain of testimony tending to such a result.   The defendants proposed to shew a state of facts, in which Chapman was the guilty actor, rendering the note utterly void.   They were therefore called upon to shew it without his aid.   The act of 1837, authorizes the calling and examination of the plaintiff *for the purpose of proving the usury*, and excuses him from criminal prosecution; but I cannot agree to the doctrine advanced by the counsel for the defendants, that when called under that act, whether the interrogations propounded tend to subject him to a penalty or forfeiture, distinct from the question of usury or not, he is bound to answer.

The judgment of the Supreme Court should be affirmed.

GRAY, J. delivered a written opinion in favor of reversing the judgment.

All the other Judges were for affirming the judgment upon the ground taken in the opinion of WRIGHT, J., and first considered in the opinion of BRONSON, J., but without considering or passing upon the other questions presented.

Judgment affirmed.