(No. 15732.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IRVING G. ZAZOVE, Plaintiff in Error.

*Opinion filed February 19, 1924.*

1. CRIMINAL LAW—*constitutional provision against giving incriminating evidence applies to writings.* The constitutional provision that no person shall be compelled in any criminal case to give evidence against himself applies to the forced production of writings or other evidence as well as to oral statements.

2. SAME—*when witness is not bound to answer.* It is for the court to judge whether evidence sought to be produced will incriminate the witness, and if from all the circumstances there appears reasonable ground to apprehend danger to the witness that the evidence sought may furnish a link in a chain of evidence by which he may be convicted of a crime he is not bound to answer.

3. SAME—*when order adjudging witness guilty of contempt will be reversed.* Where a witness ordered to produce a certain paper on a certain day appears and claims his constitutional privilege that the paper will incriminate him, an order of the court adjudging him guilty of contempt and not allowing him to file an answer will be reversed, where the statements in the excluded answer as contained in the bill of exceptions show that the paper would, in fact, tend to incriminate him.

4. CONTEMPT—*a witness claiming constitutional privilege is entitled to a hearing.* One who in the presence of the court openly defies its authority and refuses to obey its order is punishable in a summary way by fine or imprisonment, or both, without any preliminary process or interrogatory, but even in a summary proceeding a witness who refuses to produce evidence on the ground that it will incriminate him is entitled to a fair hearing and an opportunity to state the facts or to offer evidence to sustain his claim of constitutional privilege.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. HARRY A. LEWIS, Judge, presiding.

JOHN J. HEALY, and BENJAMIN C. BACHRACH, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The superior court of Cook county entered an order on May 31, 1923, adjudging Irving G. Zazove guilty of contempt of court and committed him to the county jail for six months, and he has sued out a writ of error.

The record consists of the order and the bill of exceptions. The order recites that it appearing to the court that Irving G. Zazove, attorney of record for the plaintiff in the case of Kryza *vs.* Chicago Evening American Publishing Company, has in his possession a certain paper which was offered in evidence in that case and was also introduced

as an exhibit in the criminal court of Cook county in the case of People *vs.* Zazove, and was, after a rule to show cause entered against certain witnesses in the case of Kryza *vs.* Chicago Evening American, voluntarily shown to the court by Zazove, said paper purporting to be a portion torn from the cover of a magazine by Tee Brown, who alleged that she had written thereon certain names and addresses of witnesses who testified in the case of Kryza *vs.* Chicago Evening American, and it appearing to the court that said paper is important evidence in a certain proceeding pending in this court wherein a rule has been entered upon certain persons to show cause why they should not be attached for contempt of court, and that Zazove has been repeatedly requested to produce said paper in open court, a notice was duly served upon him that a rule would be entered upon him to produce said paper instanter on May 19, 1923, and he having appeared in open court with counsel and the rule to produce the paper instanter having been entered against him, and he having been sworn as a witness, and the court having ordered him to produce said paper and he having refused to produce it or to allow the court to inspect it, giving as a reason therefor that said paper might tend to incriminate him, the court finds that Zazove is guilty of contempt of court in refusing to answer said questions or to produce said paper in open court.

The bill of exceptions shows that on May 19, 1923, the plaintiff in error, in response to a notice served upon him that a rule was about to be entered requiring him to produce the paper, appeared in court wtih his counsel and there was a colloquy in which the court insisted upon the production of the paper. The plaintiff in error declined to produce it on the ground that it would tend to incriminate him, and his counsel stated that until the Statute of Limitations had run the plaintiff in error was in danger of prosecution for perjury for his testimony in the criminal trial. He further stated that the plaintiff in error ought to give

his answer under oath, and requested the court to enter a rule on him to show cause why he should not be committed for contempt. The court asked the plaintiff in error, "Will you turn it over, Mr. Zazove?" Zazove answered that he stood on his constitutional right. The court remarked, "I don't care what your rights are; you refuse to turn it over?" Zazove answered again, "I refuse to turn it over on the ground it tends to incriminate me." The court said, "All right; I am going to hold you in contempt of court; well, you have already answered the rule now." The court, after some talk as to a stay of the *mittimus,* then said: "One year in the county jail for Mr. Zazove; now stay the execution of the sentence two weeks." No order was entered then or at any time until May 31. On the latter date the plaintiff in error appeared in court and through his counsel asked leave to file his verified answer instanter to show that he was acting in good faith in refusing to produce the paper, believing that it would tend to incriminate him, and relying upon his constitutional right, and also to reduce the penalty. Leave to file the answer was refused and the judgment was entered, the term of imprisonment being six months instead of one year. Thereupon the plaintiff in error moved the court to vacate the judgment and asked leave to file his verified petition in support of the motion. The court granted leave to file the petition but immediately struck it from the files.

The defendant in error contends that there is nothing before this court except the judgment itself, and if the findings are sufficient to sustain the judgment there can be no reversal. The substance of the findings is that the plaintiff in error had possession of the paper and was ordered to produce it in a cause in which it was material evidence, but refused to do so on the ground that it might tend to incriminate him. On these findings he was adjudged guilty of contempt, for which he was sentenced to imprisonment in the county jail. The court made no finding that the

production of the paper would not tend to incriminate the plaintiff in error or that it would. The judgment affords no ground for any inference on this question. Before the judgment was entered the plaintiff in error sought to show cause why he should not be punished for contempt and asked that a rule might be entered for that purpose. No rule was entered for the reason that it was not necessary in a case of contempt committed in the presence of the court. The defendant asked leave to file his answer setting up the facts upon which he relied to justify his refusal to produce the paper. He was denied leave and afterward moved to vacate the judgment, showing by his verified petition the same facts alleged in the answer which he had been refused leave to file. The court allowed the statement to be filed but immediately struck it out, saying, "Let the record show that it is stricken by reason of the fact that it contains matters that are not germane to the subject before the court and is a reflection upon the integrity of the court."

The constitutional provision is that no person shall be compelled in any criminal case to give evidence against himself. This applies to the forced production of writings or other evidence as well as to oral statements. (*Lamson* v. *Boyden,* 160 Ill. 613.) The court apparently failed to appreciate the force of this constitutional provision, for in response to the statement of the plaintiff in error, "I stand on my constitutional right," the court said, "I don't care what your rights are; you refuse to turn it over?" and upon the plaintiff in error's statement, "I refuse to turn it over on the ground it tends to incriminate me," the court said, "All right; I am going to hold you in contempt of court." The answer which appears in the bill of exceptions contains the facts upon which the plaintiff in error relied as showing that the evidence would have a tendency to incriminate him. The court's refusal to permit the filing of the answer must be regarded as a holding that the facts stated were insufficient to show the existence of the privi-

lege of the witness to refuse to produce the evidence. The facts stated were, that the plaintiff in error was an attorney for Susie Kryza in an action brought by her against the Evening American Publishing Company, and on the trial of that cause in March, 1923, offered in evidence the slip of paper involved in this proceeding. It had on it two names and addresses of witnesses, and Tillie Brown testified that they were written on the paper on August 18, 1921, at the time of the accident which was the basis of the suit. An objection to the paper was sustained. After the trial the defendant made a motion for a new trial, on the hearing of which three of the witnesses who had testified in the case repudiated their testimony and said that it was false. A rule to show cause why they should not be punished for contempt was entered against these witnesses, two of whom attempted to involve the plaintiff in error as a party to the giving of their false testimony, and as a result the plaintiff in error, Tillie Brown and three others were indicted by the grand jury for conspiracy to commit perjury and subornation of perjury. On motion of the State's attorney a severance was granted, and the plaintiff in error, Tillie Brown and Israel Seigell were tried together and found not guilty. On this trial Tillie Brown testified, as she had in the civil suit, that the names and addresses were written on the paper on August 18, 1921, in the presence of a person who stated that his name was Michael Baron. Baron testified in the civil suit that he was present and witnessed the accident. On the motion for a new trial he repudiated his testimony, and testified, as he also did on the criminal trial, that the names and addresses were written on the paper in the office of the plaintiff in error, and in his presence, on March 1, 1923. The plaintiff in error testified that the paper was not prepared in his presence. After the trial in the criminal case, while the motion for a new trial in the civil case was being argued, the attorney for the defendant in that case requested that the

paper be produced in open court, and stated that it was his purpose to submit it to experts, whom he afterward could call as witnesses to show that the paper did not exist on August 18, 1921, and came into existence only in March, 1923. The answer by the plaintiff in error stated that he believed that the attorney for the defendant in the civil case could, through the payment of sufficiently large fees, induce experts to falsely testify in favor of such contention, and that the plaintiff in error might not be able to show the falsity of such testimony; that after the conclusion of the criminal trial he was informed that the State's attorney of Cook county, acting in conjunction with the attorney for the defendant in this suit, was seeking new and additional indictments against the plaintiff in error charging him with subornation of perjury and conspiracy to commit perjury as a result of the testimony given in the criminal trial; that such threats had been published through the press of the city of Chicago by the attorney for the defendant in the civil suit, and the plaintiff in error was informed and believed that the State's attorney and the attorney for the defendant in the civil suit were planning to obtain and use the slip of paper as evidence against the plaintiff in error in such contemplated new criminal charges, and the attorney for the defendant in the civil suit hoped to obtain false and perjured testimony to sustain the false and perjured testimony of the witnesses against him. It was further stated that the motion for a new trial in the civil case had been disposed of by granting the defendant a new trial, and judgments had been entered in the contempt proceedings against the three witnesses who admitted they had testified falsely, adjudging them guilty of contempt, and there was nothing before the court with relation to which the slip of paper was material evidence. The bill of exceptions, however, shows that these matters were pending when demands were made in open court that the plaintiff in error produce the paper and he refused to do so.

The statement in support of the motion to vacate contained the following: "This respondent further represents and shows that he is fully convinced and firmly believes that the production of said document by him will tend to criminate him and will tend to prove that this respondent has been guilty of one or more of the criminal charges now threatened against him, and that the attempt which is now being made to require this respondent to produce said document is an attempt to compel him in a criminal case to give evidence against himself, and is in violation of his constitutional rights and an invasion thereof, being in conflict with the fourth and fifth amendments to the Federal constitution and section 10 of article 2 of the bill of rights of the constitution of the State of Illinois, and is also in conflict with the fourteenth amendment of the Federal constitution and sections 2 and 6 of article 2 of the bill of rights of the Illinois constitution." This paragraph was construed as a reflection upon the court and was the matter referred to when the court said, "Let the record show that it is stricken by reason of the fact that it contains matters that are not germane to the subject before the court and is a reflection upon the integrity of the court." The claim of constitutional privilege was germane to the matter before the court, and there is no basis for the charge that there was any reflection upon the integrity of the court.

Where one in the presence of the court openly defies its authority and refuses to obey its order he is punishable in a summary way by fine or imprisonment, or both, without any preliminary affidavit, process or interrogatory. (*People v. Cochrane*, 307 Ill. 126; *Tolman* v. *Jones*, 114 id. 147.) In this case, however, the plaintiff in error based his refusal to obey the order of the court upon his constitutional privilege to refuse to give evidence against himself in a criminal case, and he had a right to a fair hearing and determination of his defense. The court did not give him a hearing of his defense and its judgment did not determine

this question. The court declined to permit the defendant to state the facts which constituted his claim of privilege or to give him an opportunity to justify his claim. Upon his answer to the court's interrogatory that he refused to turn the paper over on the ground that it tended to incriminate him, the court announced that he was going to hold him in contempt of court, without any finding that the production of the paper would not tend to incriminate him and without any showing that it would not do so and without permitting him to show that it would do so. Though the proceeding was summary plaintiff in error was entitled to a fair hearing and an opportunity to state the facts constituting his justification, and, if necessary, to offer evidence to sustain his claim of constitutional privilege. (*Sherman* v. *People,* 210 Ill. 552; *People* v. *Spain,* 307 id. 283.) It is for the court to judge whether the evidence sought to be adduced will furnish evidence against the witness, and if from all the circumstances there appears reasonable ground to apprehend danger to the witness that the evidence sought may furnish a link in a chain of evidence by which he may be convicted of a crime he is not bound to answer. (*Minters* v. *People,* 139 Ill. 363; *Manning* v. *Mercantile Securities Co.* 242 id. 584.) It is apparent from the facts stated in the plaintiff in error's answer that he was justified in the belief that the production of the paper would furnish a link in the chain of evidence by which he might be convicted of perjury on the criminal trial, and he was entitled to the benefit of his constitutional right to refuse to furnish that link.

The judgment of the superior court of Cook county will be reversed.

*Judgment reversed.*